LOTTINGER, Judge.
. This is a suit filed by the United Federal Savings & Loan Association, formerly known as First Federal Savings & Loan Association of Concordia (hereinafter sometimes referred to as UNI-FED) against Monroe Building & Loan Association (hereinafter sometimes referred to as MB&L) and Clebert C. Smith, as Commissioner of Financial Institutions for the State of Louisiana (hereinafter sometimes referred to as Commissioner) as defendants. The purpose of this suit is to annul the Commissioner’s approval of an application by MB&L to locate a branch in the municipality of Ferriday, Louisiana. The Lower Court rendered a judgment in favor of defendants dismissing the plaintiff’s suit, and the plaintiff has appealed.
Ferriday, Louisiana, which is located in Concordia Parish, is an incorporated municipality of about 5,500 residents. It is some nine miles from Vidalia, Louisiana,
On December 19, 1973, UNI-FED, which is domiciled in the town of Vidalia, Concordia Parish, Louisiana, applied for authority from the Federal Home Loan Bank Board to establish a branch office in Ferriday. This application was approved on February 21, 1974, and UNI-FED opened its Ferriday branch office on August 1, 1974.
On February 4, 1974, MB&L, which is domiciled in Monroe, Ouachita Parish, Louisiana, applied for authority from the Commissioner to establish its own branch in the town of Ferriday. On February 12, a representative of the Louisiana State Banking Department’s Savings & Loan Division orally notified UNI-FED of MB&L’s application, at which time UNI-FED orally registered its opposition. On February 18, 1974, representatives of UNI-FED delivered to the Commissioner their written opposition to MB&L’s application for a branch office in Ferriday, but they were advised that the application had already been approved on February 15, and that written notice thereof had already been mailed.
An exception of no right of action was filed by the defendants under the contention that under the provisions of LSA-R.S. 6:852(C) only associations actually in existence in the community where a branch is proposed to be established have a right to contest the Commissioner’s actions and that plaintiff, not being an association existing in the community of Ferriday at the time of the Commissioner’s ruling did not have a right to file this suit.
The Lower Court found the issues before the Court to be whether, under the Louisiana Administrative Procedures Act[1] *659 plaintiff was entitled to notice of and a formal hearing before the Commissioner on MB&L’s application; whether LSA-R. S. 6:852(C)[2] is unconstitutional as a denial of due process and equal protection of the laws under the State and Federal Constitutions, and as an unlawful delegation of legislative authority; and whether the Commissioner’s determinations with respect to “undue injury” and “advisability”, under the provisions of LSA-R.S. 6:852(C), were arbitrary and capricious, and not supported by substantial evidence.
The Lower Court chose to decide the case on the merits rather than to consider the exception of no right of action and accordingly, the exception was overruled.
The plaintiff-appellant argues that the Trial Judge erred in holding that: (1) the Commissioner was not required to comply with the Louisiana Administrative Procedures Act; (2) the Commissioner complied with the statutory and constitutional requirements of state and federal law; (3) the Commissioner’s decision was supported by substantial evidence and not arbitrary; and (4) LSA-R.S. 6:852(C) is constitutional.
In First National Bank of Abbeville v. Sehrt, 246 So.2d 382 (La.App.1st Cir. 1971) rehearing denied, 1971, writ refused, 258 La. 909, 248 So.2d 334 (1971), similar questions were before this Court. There we held that the Louisiana Administrative Procedures Act applies only in cases where a hearing is presently provided for by law. In so holding we said:
“The foregoing[3] can only be construed to make the Act applicable only when a hearing is presently provided for by law. It does not create the right to a hearing when none is presently required. It provides the procedure to be followed when holding administrative hearings otherwise required by law.” (emphasis by the Court).
Though the Abbeville case was concerned with banks and banking, it is significant that LSA-R.S. 6:852(C) also does not require the Commissioner to hold a hearing before approving an application to establish a branch office. We feel that our reasoning in the Abbeville case holds true here and thus do not find that the Trial Judge erred in holding that the Commissioner was not required to comply with *660 the Louisiana Administrative Procedures Act.
We do not agree that the Trial Judge erred in holding that the Commissioner complied with the statutory and constitutional requirements of state and federal law and that LSA-R.S. 6:852(C) is constitutional.
Similar questions were raised and answered in First National Bank of Abbeville v. Sehrt, supra, and therein under facts most similar, we said:
“We can see no denial of due process in this case. Primarily, we do not believe that the due process clause can be invoked to prevent lawful competition. It can hardly be argued that there is a deprivation of property simply because another bank might be established in the area. Plaintiffs have no' vested interest in the banking business of their area, and hold no exclusive franchise.
“Second, we find that the requirements of due process have been satisfied herein. No one questions the absolute right of the Legislature to regulate banking and to provide the means for the establishment of banks within the State. It has chosen to delegate this authority to the State Bank Commissioner. His determinations in this respect are subject to judicial review and opponents have standing to demand the same under Article I, Section 6 of the Louisiana Constitution, which provides:
“ 'All courts shall be open, and every person for injury done him in his rights, lands, goods, person or reputation shall have adequate remedy by due process of law and justice administered without denial, partiality or unreasonable delay.’ ”[4]
The final question to be resolved by this Court is whether or not the action of the Commissioner in approving the application was “arbitrary” and “capricious”. In support of its argument that the action of the Commissioner was arbitrary and capricious the plaintiff claims that the decision was made without sufficient evidence and that plaintiff was denied an opportunity to be heard.
The record discloses that an application and economic report was furnished the Commissioner by MB&L. An investigation was then conducted by Mr. Pierce Carey, State Bank Examiner, during which he visited with plaintiff as well as the Fer-riday area. Although plaintiff proposes that Ferriday and Vidalia should be considered a single community, the application of UNI-FED to the Federal Home Loan Bank Board indicates otherwise, the investigation of Mr. Carey indicates they are separate communities, and several prominent citizens of Ferriday testified that they do not consider themselves part of a single community. Mr. Benjamin Daigle, Executive Vice-President of plaintiff-appellant, testified that there was some 8.7 millions of dollars in unrealized savings in the Fer-riday area.
Mr. Carey was the gentleman who first informed MB&L of the pending application for a branch office to be located in Ferriday and he took MB&L’s objection into consideration in preparing his report. His conclusion was that the community of Ferriday could support two branches of savings and loan associations.
Lastly, the Commissioner testified that at the time he received the letter of objection from MB&L a letter approving the application of UNI-FED had already been mailed to the applicant. He could have changed his decision after a subsequent meeting with representatives of MB&L, however, based upon the investigation of Mr. Carey, as well as other infor *661 mation submitted him, he affirmed his decision of granting the application. The plaintiff has failed to show that the decision of the Commissioner in granting the permit was “arbitrary” or “capricious” and therefore we find no error on the part of the Trial Judge.
Therefore, for the reasons hereinabove assigned the judgment of the Trial Court is affirmed, all costs of this appeal to be paid by plaintiff-appellant.

Affirmed.

. LSA-R.S. 6:852(0) provides:
“No association may establish or maintain a branch office without the prior written approval of the commissioner. Notwithstanding the definition of ‘primary lending area’, no branch office shall be established or maintained except within one hundred miles of the place where the association is domiciled. Each application for approval of the establishment and maintenance of a branch office shall state the proposed location thereof, the need therefor, the functions to be performed therein, the estimated volume of business thereof, the estimated annual expense thereof, and the mode of payment therefor. Each such application shall be accompanied by a budget of the association for the current earnings period and for the next succeeding semiannual period, which reflects the estimated additional expense of the maintenance of such a branch office. Upon the receipt by the commissioner of such an application, he shall determine whether the establishment and maintenance of such office will unduly injure any properly conducted existing association or federal association in the community where such branch office is proposed to be established. If he finds that no undue injury is likely to result and that the establishment and maintenance of such branch office is advisable, he may approve the application.”

. The “foregoing” that reference is made to is : “R.S. 49:955(A) provides that:
“ ‘In an adjudication, all parties who do not waive their rights shall be afforded an opportunity for hearing after reasonable notice.’
“R.S. 49:951 contains the following provisions :
“ ‘As used in this Chapter:
“‘(1) “Adjudication” means agency process for the formulation of a decision or order.
“ ‘ (3) “Decision” or “order” means the whole or any part of the final disposition * * * of any agency, in any matter other than rule making, required by constitution or statute to be determined on the record after notice and opportunity for an agency hearing * * ”

. Art. 1, § 22 of the Louisiana Constitution of 1974 provides :
“All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.”